1  Thomas M. Monson, SBN 071993
   Susan L. Horner, SBN 144806
2  **MILLER, MONSON, PESHEL, POLACEK & HOSHAW**
   A Partnership of Professional Law Corporations
3  501 West Broadway, Suite 700
   San Diego, CA 92101
4  (619)239-7777
   FAX: (619) 238-8808
5  e-mail: tommonson@erisa-law.com

6  Attorneys for Plaintiff

7

8

9                    UNITED STATES DISTRICT COURT
10
                    SOUTHERN DISTRICT OF CALIFORNIA
11

12

13                                        CASE NO.:   **08 cv 0157 JLS (POR)**
   KENT E. KIMBERLY, M.D., an individual,
14
                           Plaintiff,     PLAINTIFF'S OPPOSITION TO
15                                         DEFENDANT SHARP REES-STEALY
   v.                                      MEDICAL GROUP INC. GROUP LONG
16                                         TERM DISABILITY INSURANCE PLAN'S
   SHARP REES-STEALY MEDICAL GROUP         MOTION TO STRIKE PURSUANT TO
17 INC. GROUP LONG TERM DISABILITY         FED.R.CIV.P. 12(f) OR, IN THE
   INSURANCE PLAN                          ALTERNATIVE, MOTION TO DISMISS
18                                         PURSUANT TO FED.R.CIV.P. 12(b)(6)
                           Defendants.
19
                                          Date:      July 17, 2008
20                                        Time:      1:30 PM
                                          CTRM:      6 (Third Floor)
21                                        JUDGE:     Honorable Janis L. Sammartino

22

23       Plaintiff **KENT KIMBERLY, M.D.,**  ("Dr. Kimberly") submits his Opposition to Defendant

24  Sharp Rees-Stealy Medical Group Inc. Group Long Term Disability Insurance Plan's Motion to Strike

25  Pursuant to Fed. Rule Civ. Pro. 12(f),  or, in the Alternative, Motion to Dismiss Pursuant to Fed. Rule

26  Civ. Pro. 12(b)(6).

27       Abbreviations:  Sharp Rees-Stealy Medical Group Inc.: "**SRSMG.**"  Hartford Life and Accident

28  Insurance Company: "**Hartford.**"  The Group LTD Insurance Plan:  "**LTD Plan.**"

                                          Pltf's Oppo to Def's Mot.to Strike/Dismiss

# TABLE OF CONTENTS

PAGE

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   LEGAL STANDARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.    DEFENDANT'S CONTENTION THAT
              PLAINTIFF CANNOT BOTH OR ALTERNATIVELY
              SEEK ERISA § 502 (a)(1)(B) and § 502(a)(3) RELIEF
              IS ERRONEOUS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      B.    THIS COURT SHOULD NOT STRIKE OR DISMISS
              PLAINTIFF'S PRAYER FOR INJUNCTIVE RELIEF,
              AND IF NECESSARY IN ORDER TO SPEC
              FIDUCIARY BREACHES, SHOULD GRANT
              PLAINTIFF LEAVE TO AMEND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

Page

FEDERAL CASES

### UNITED STATES SUPREME COURT

Black & Decker Disability Plan v. Nord,

    538 U.S. 822, 830, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003)........................ 15

Everhart v. Allmerica Fin. Life Ins. Co., 275 F.3d 751, 756 (9th Cir. Cal. 2001),

    cert denied, 536 U.S. 958, 122 S. Ct. 2662, 153 L. Ed. 2d 836 (2002)................ 6, 14

Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 221,

    151 L. Ed. 2d 635, 650,   122 S. Ct. 708, 719 (2002). ........................... 9, 13

John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank, 114 S.CT. 517, 524 (1993). ....... 8

Mertens v. Hewitt Assocs., 508 U.S. 248, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993)............ 13

Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90  (1974). ............... 33

Varity Corp. V. Howe, 516 U.S. 489, 511, 515,

    116  S.Ct. 1065, 134 L. Ed. 2d 130 (1996). ............... 6, 7, 8, 9, 10, 11, 13, 18, 19, 23


### CIRCUIT COURTS OF APPEAL AND DISTRICT COURTS

Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955 (9th Cir. Cal. 2006) en banc........... 21, 22

Abramson v. Brownstein, 897 F.2d 389, 391 (9th Cir. 1990)................................. 3

Adams v. Johnson, 355 F.3d 1179, 1183 (9th Cir. 2004) .................................. 3

Aikens v. U.S. Transformer, Inc., 2008 U.S. Dist. LEXIS 19285 (D. Idaho Mar. 11, 2008). .... 12, 13

Arocho v. Goodyear Tire & Rubber Co., 88 F.Supp.2d 1175, 1185 (D.Kan. 2000)............... 2

Baca-Flores v. Hartford Life and Acc. Ins. Co., 2006 WL 286868 (E.D. Mich. Feb 06, 2006). .... 20

Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). ........................ 4

Barchus v. Hartford Life and Acc. Ins. Co., 320 F. Supp. 2d 1266 (M.D. Fla. May 04, 2004)...... 30

Black v.  Long Term Disability Ins., 373 F.Supp.2d 897 (E.D.Wisc. 2005). ............ 10, 11, 18

Blickenstaff v. R.R. Donnelley & Sons Co., 378 F.3d 669, 674 (7th Cir. 2004)................. 10

Burlington N.R.R. Co. v. Dep't of Revenue, 934 F.2d 1064, 1074 (9th Cir. 1991).. . . . . . . . . . . . .  24

Caplan v. CNA Fin. Corp., 544 F. Supp. 2d 984,

    2008 U.S. Dist. LEXIS 28290 (N.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . . .  19. 20 fn.12

Cardin v. Hartford Life & Acc. Ins. Co., 366 F. Supp. 2d 692 (C.D. Ill. Apr 14, 2005).. . . . .  20 fn.12

Clark v. Qwest Disability Plan, 2008 U.S. Dist. LEXIS 28398, *2

    (W.D. Wash. Apr. 8, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

Collinsworth v. Hartford Life and Acc. Ins. Co.,

    2005 WL 1189841 (N.D. Tex. May 19, 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20 fn.12

Corkill v. Hartford Life and Acc. Ins. Co.,

    2005 WL 1139915 (N.D. Fla. Apr 28, 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20 fn.12

Cyr v. Reliance Std. Life Ins. Co.,

    525 F. Supp. 2d 1165, 2007 U.S. Dist. LEXIS 87597 (C.D. Cal. 2007). . . . . . . . . . . . .  14, 15

Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 89 (2d Cir. 2001). . . . . . . . . . . . . . .  10, 18

DeLorenzo v. Hartford Life and Acc. Ins. Co., 2006 WL 485119

    (M.D. Fla. Feb 28 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20 fn.12

Delucchi v. Life Ins. Co., 2005 WL 146902 (N.D. Cal. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Dorholt v. Hartford Life and Acc. Ins. Co., 2006 WL 475280 (D. Minn. Feb 28, 2006). . . . .  20 fn.12

Ehrman v. Standard Ins. Co., 2007 U.S. Dist. LEXIS 35124, 2007 WL 1288465, *4

    (N.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

Finkelstein v. Guardian Life Ins. Co. of Am., 2007 U.S. Dist. LEXIS 92053

    (N.D. Cal. Dec. 5, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

Ford v. MCI Communs Corp. Health & Welfare Plan, 399 F.3d 1076, 1083

    (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13, 14, 15, 16, 17

Fredericks v. Hartford Life Ins. Co.,  Services Medical Group.,

    2007 U.S. Dist. LEXIS 23666 (N.D.N.Y. March 30, 2007). . . . . . . . . . . . . . . . . . . . . . .  12

Frei v. Hartford Life Ins. Co., 2006 WL 563051 (N.D. Cal. Mar 07, 2006). . . . . . . . . . . . . .  20 fn.12

Galutza v. Hartford Life & Accident Ins. Co., 2008 U.S. Dist. LEXIS 45781

    (N.D. Okla. June 12, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18-19

Goldman v. Hartford Life and Acc. Ins. Co., 417 F. Supp.2d 788 (E.D. LA Feb 23, 2006). .  20 fn.12

Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d 300 (3rd Cir. 2008) (1/29/08). . . . . . . . . . . .  18

Hanusik v. Hartford Life Ins. Co., 2008 U.S. Dist LEXIS 7520 (E.D. MI Jan. 31, 2008). . . .  20 fn.12

Hartranft v. Hartford Life and Acc. Ins. Co., 2004 WL 2377228 (D. CT Sep 30, 2004). . . . .  20 fn.12

Hicklin v. Hartford Life & Accident Ins. Co.,  2007 U.S. Dist. LEXIS 96059

      (C.D. Cal. Dec. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20 fn.12

In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig.,

      2005 U.S. Dist. LEXIS 42706, 2005 WL 1972565 at * 3. . . . . . . . . . . . . . . . . . . . . . . . . .  6, 7

Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1490 (7th Cir. 1996). . . . . . . . . . . . . . . .  10

Kazazian v. Finlay Fine Jewelry Corp., 2003 WL 22594439 (D. Mass. Nov 10, 2003). . . . . .  20 fn.12

Krohmer-Burkett v. Hartford Life and Acc. Ins. Co., 2005 WL 2614503

      (M.D. Fla. Oct 14, 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20 fn.12

Lewis v. ITT Harford Life and Acc. Ins. Co., 295 F.Supp.2d 1053 (D. Kan. Oct 11, 2005) . .  20 fn.12

Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005). . . . . . . . . .  3

Lunsford v. Hartford Life & Acc. Ins. Co., 2005 WL 2088423 (S.D.W.V.. Aug 26, 2005) . .  20 fn.12

McLeod v. Hartford Life and Acc. Ins. Co., 372 F.3d 618 (3d Cir. 2004). . . . . . . . . . . . . . .  20 fn.12

Mathews v. Chevron Corp., 362 F.3d 1172, 1178 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . .  13

Matney v. Hartford Life Ins. Co., 2005 WL 578476 (N.D. Tex. Mar 10, 2005). . . . . . . . . . . .  20 fn.12

Moody v. Liberty Life Assur. Co., 2007 U.S. Dist. LEXIS 32837,

      2007 WL 1174828 (N.D. Cal. Apr. 19, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15-16

Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Rabuck v. Hartford Life & Accid. Ins. Co., 2007 U.S. Dist LEXIS 80246

      (W.D. Mich. 10/30/2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20 fn.12

Richards v. Hartford Life and Acc. Ins. Co., 356 F. Supp. 2d 1278 (S.D. Fla. Dec 01, 2004).  20 fn.12

Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984). . . . . . . . . . . . . . . .  3

Rosenburg v. IBM, 2006 U.S. Dist. LEXIS 41775,

      38 Employee Benefits Cas.(BNA) 1202 (N.D. Cal. Jun. 12, 2006). . . . . . . . . . . . . . . . . . . .  6-7

/ / /

Russo v. Hartford Life & Accident Ins. Co., 2002 U.S. Dist. LEXIS 26566

    (S.D. Cal. February 5, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863,

    2008 U.S. App. LEXIS 8136 (9th Cir. Cal. 2008) (as amended 4/16/08). . . . . . . . . . . 21, 22

Schikore v. BankAmerica Supplemental SI (MEJ) Retirement Plan,

    269 F.3d 956, 962-63 (9th Cir. 2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Shwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Silver Sage Partners Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 826-827

    (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Smallwood v. Nat'l Can Co., 583 F.2d 419, 420 (9th Cir. 1978).. . . . . . . . . . . . . . . . . . . . . . . . 24

SmileCare Dental Group v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 782 (9th Cir. 1996). . . . . . 3

Sollon v. Ohio Cas. Ins. Co., 396 F. Supp. 2d 560 (W.D. Pa. 2005) . . . . . . . . . . . . . . . . . . . . 20 fn.12

Tripp v. Hartford Life and Acc. Ins. Co., 337 F. Supp. 2d 196 (D. Me. Sep 17, 2004). . . . . . 20 fn.12

Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). . . . . . . . . . . . . . . . 3

Whitley v. Hartford Life & Accid.Ins.Co., 2008 U.S. App. LEXIS 1901

    (4th Cir. Jan. 29, 2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20 fn.12

Work v. Hartford Life and Accident Ins. Co., 2005 WL 3071704 (E.D. Pa. Nov 15 2005). . . 20 fn.12

Wright v. R.R. Donnelly & Sons Co. Group Benefits Plan, 402 F.3d 67 (1st Cir. 2005). . . . . 20 fn.12


FEDERAL CODES AND REGULATIONS

29  U.S.C.S. § 1001(b)         ERISA § 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

29 U.S.C. 1132 (a)(1)(B)      ERISA § 502(a)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 7, 8, 13

29 U.S.C. 1132(g),          ERISA § 502(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 10-20

29 U.S.C. 1132(a)(3),        ERISA § 502 (a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-14, 19

29 U.S.C. 1132(d)(2),        ERISA § 502(d)(2).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

29 U.S.C. 1133             ERISA § 503. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

29 U.S.C. 1104(a)(1)        ERISA §404(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

29 U.S.C. 1109,           ERISA §409. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Fed. Rule Civ. Proc. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

Fed. Rule Civ. Proc. 8(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed. Rule Civ. Proc. 18(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Fed. Rule Civ. Proc. 19(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

        Regulation

29 C.F.R. 2560.503-1

29 C.F.R. 2560.503-1 (a)-(i) (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

29 C.F.R. 2560.503-1(a)-(j) (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18

29 C.F.R. 2560.503-1(m). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 21

SECONDARY SOURCES

Jeffrey Lewis & Dan Feinberg, "*Varity Corp. v. Howe: The Plaintiff's Perspective*,"

        5 No. 2 ERISA Litig. Rep. 3, 7, June 1996.) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# I.

# __INTRODUCTION__

This is an action under the Employment Retirement Income Security Act of 1974 ("ERISA") seeking group long term disability (LTD) benefits under a group disability policy issued by Hartford, effective September 1996, covering the employees of SRSMG. It provides SRSMG physicians with own-occupation coverage at 60% of their predisability earnings after a 90-day "elimination period". Dr. Kimberly, an eye surgeon employed by SRSMG, earning an average of $12,214 per month when he became disabled on and after May 31, 2001, was insured under Hartford's policy. Dr. Kimberly's symptoms were originally (mis)diagnosed as resulting from major depression, giving him the diagnosis of Major Depressive Disorder (MDD), although none of the innumerable antidepressants that were tried achieved beneficial effect. Finally he fell asleep at the wheel and crashed into a median, after which investigation into sleep disorders was started and he was diagnosed with severe Obstructive Sleep Apnea Syndrome (OSAS). A basic CPAP nasal mask was essentially ineffective in improving his OSAS symptoms. Believing nothing else would help, he underwent a brutal one-month course of 16 bilateral Electroconvulsive Shock Treatments (bilateral ECT) which carry procedural risk of memory loss and cognitive impairment ranging from short term to permanent. Unfortunately, he was left unmonitored and/or sent home unmonitored during recovery from anesthesia. By the 16th treatment, he had severe memory difficulties. He was diagnosed with Cognitive Disorder; Amnesic Disorder, has significant short term and long term memory deterioration, loss and impairment, significant attention, comprehension impairment resulting from prolonged oxygen deprivation from episodes of severe OSAS together with the (unmonitored post-anesthesia) multiple ECT treatments. Due to the original diagnosis of MDD, Hartford categorized his disability claim as "mental illness", but steadfastly refused to correct or change it after the severe OSAS was discovered to be the origin of his disabling symptoms, or after the end of the bilateral ECT which left him with apparently permanent cognitive deficits and short term memory problems. He was medically unsafe to perform his occupation as an eye surgeon. On April 29, 2004, received May 3, 2004, Hartford communicated a termination of disability benefits citing the 24-month mental illness provision. Plaintiff appealed Hartford reasons for denial. Hartford commissioned University Disability Consortium (UDC) with which Hartford routinely works, to arrange for reviews of

various of Plaintiff's records.  Plaintiff requested copies of the new reviews and an opportunity to comment on or respond to any new assertions or arguments contained in them prior to Hartford conducting its own final review.  Hartford refused, receiving the new reports, one of which was 27 pages in length and making a variety of new assertions, assessments arguments and/or conclusions, several days after which Hartford sent Plaintiff it's "final" denial —relying on the new evidence it commissioned— and advising Plaintiff his "administrative remedies" were now exhausted and his file closed.  Plaintiff's counsel has seen this maneuver by Hartford repeatedly in case opinions and as communicated by other attorneys known to Plaintiff's counsel.  Hartford was told in 2002 in an amicus brief by the Secretary of Labor, who participated in another disability benefits case Plaintiff's counsel litigated, that the failure by Hartford to provide the claimant with an opportunity to review and comment on or respond to all the evidence, at a time while it was still meaningful during the administrative process to do so, violates ERISA's full and fair review requirements and is a breach of fiduciary duty.  Plaintiff has and continues to be unable to perform his occupation as an eye surgeon, and will never be able to practice as an eye surgeon again given his cognitive problems.  Plaintiff filed his action under ERISA, seeking benefits against the LTD Plan under (a)(1)(B) and any other equitable relief the court finds, after hearing all of the evidence in the case, is "appropriate." this includes but is not limited to declaratory relief as to breaches of fiduciary duty or injunctive relief –not injunctive relief to pay the benefits, as that would be duplicative of an (a)(1)(B) remedy— but injunctive relief to enjoin any fiduciary or agent of the LTD Plan that performs handling or investigation of Plaintiff's claim in the future once Plaintiff's claim and benefits are reinstated (including Hartford) from refusing to provide Plaintiff with all records related to his claim as defined under the regulations at 29 C.F.R. 2560.503-1(m).  Injunctive relief is not available under (a)(1)(B), and the award of past benefits will not prevent or remedy such violations in the future.

## II.

## LEGAL STANDARD

Regarding Motion to Strike:  Plaintiff has alleged nothing that is "immaterial, impertinent or scandalous" in his Complaint.   Plaintiff has alleged events related to his claim and exhaustion of administrative remedies that transpired chronologically, which does not constitute improper 'redundancy.'  While Defendant seems to recognize that all of the allegations are inextricably intertwined

with facts and procedures related to Plaintiff's claim and Hartford's handling of it, and thus none of it "immaterial," the crux of Defendant's motion to strike is Defendant's contention that certain of the "requested relief . . . [ ] is not recoverable as a matter of law" and thus the court "should strike prayers for relief where the relief sought cannot be awarded."

Regarding Motion to Dismiss:    Defendant's motion to dismiss is completely misplaced.  A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Because the focus of a 12(b)(6) motion is on the legal sufficiency, rather than the substantive merits of a claim, the Court ordinarily limits its review to the face of the complaint. See Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002).  Generally, dismissal is proper only when the plaintiff has failed to assert a cognizable legal theory or failed to allege sufficient facts under a cognizable legal theory.  See SmileCare Dental Group v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 782 (9th Cir. 1996); Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984). Further, dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of a claim. See Abramson v. Brownstein, 897 F.2d 389, 391 (9th Cir. 1990). In considering a 12(b)(6) motion, the Court accepts the plaintiff's material allegations in the complaint as true and construes them in the light most favorable to the plaintiff. See Shwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000).; Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974); Adams v. Johnson, 355 F.3d 1179, 1183 (9th Cir. 2004) ("All allegations and reasonable inferences are taken as true, and the allegations are construed in the light most favorable to the non-moving party, but conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." (internal quotations omitted)). "Dismissal is proper under Rule 12(b)(6) if it appears *beyond doubt* that the non-movant can prove no set of facts to support its claims." *Id.*  A district court's dismissal of a complaint without leave to amend is reviewed de novo and would be found to be improper "unless it is clear that the complaint could not be saved by any amendment." Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).

Plaintiff has properly and more than sufficiently pleaded  a claim for payment of own-occupation (Plaintiff was an eye surgeon) disability benefits under ERISA § 502(a)(1)(B).  However, the violations

1   and wrongs that Plaintiff has alleged cannot be completely remedied simply by reinstatement of

2   Plaintiff's claim together with an award of past benefits, interest thereon and § 502(g) attorney's fees and

3   costs.  As explained below, Plaintiff has also more than sufficiently pleaded facts that would permit the

4   court to impose other equitable relief as "appropriate" under § 502(a)(3), depending on the Court's

5   ultimate findings on various facts and issues involved in this matter.

6        Whether or not the Court *ultimately* determines that the wrongs and violations alleged can be

7   remedied only in part under (a)(1)(B) but not in whole as the Court deems appropriate without also

8   awarding certain relief that is available through (a)(3) (including declaratory and injunctive relief) is not

9   the question presently, because the parties are at the initial pleading stage.   Therefore, the Court should

10  not strike or dismiss any prayer for relief alleged to be available under (a)(3) at this time.

11       After review of Plaintiff's points and authorities and supporting request for judicial notice of the

12  Secretary of Labor's position about Hartford's prior violations of its disclosure duties, which it has

13  knowingly and purposefully repeated in this case, if the Court determines that injunctive relief imposed

14  against the LTD Plan, alone, is sufficient (since it would require that any fiduciary or administrator acting

15  on behalf of the Plan comply with said injunctive relief), then the Court would not need to grant leave

16  to Plaintiff to amend the Complaint to specifically name Hartford, as a plan administrator and plan

17  fiduciary, as a Defendant.

18       Alternatively, if the Court determines that any injunctive relief against the Plan (through which

19  Hartford acts) would not sufficiently bind Hartford or any future claim fiduciary acting on behalf of the

20  LTD Plan, to prevent it from repeating its fiduciary breaches in the future during its claim administration

21  of Plaintiff's continuing LTD claim, and that Plaintiff should amend his complaint to name Hartford

22  individually,  then the Court should grant Plaintiff leave to amend to name Hartford as a Defendant under

23  (a)(3).

24       This memorandum presents the authorities showing that 1) Hartford as a plan fiduciary, sole claim

25  administrator, and a plan administrator by the Regulations (29 C.F.R. 2560.503-1) can be a proper named

26  Defendant on an (a)(3) claim;  2) an (a)(1)(B) benefits claim against the LTD Plan can coexist with an

27  (a)(3) claim against Hartford.   In any event, it cannot be disputed that Hartford is the entity that is

28  actually defending this action on behalf of the LTD Plan.

### III.

### ARGUMENT

A.    <u>DEFENDANT'S CONTENTION THAT PLAINTIFF CANNOT BOTH</u>

<u>OR ALTERNATIVELY SEEK ERISA § 502 (a)(1)(B) and § 502(a)(3)</u>

<u>RELIEF IS ERRONEOUS</u>

29 U.S.C.S. § 1132, ERISA § 502, titled "Civil Enforcement" states:

**(a)** Persons Empowered to Bring Civil Action — A civil action may be brought –

    **(1)**    by a participant or beneficiary --

      (A)  for the relief provided for in subsection (c) of this section [penalty section], or

      (B)  to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan **;**

    **(2)**  by the Secretary, or <u>by a participant, beneficiary</u> or fiduciary for appropriate relief under section 1109 [§409] [on behalf of a plan] **;**

    **(3)**  <u>by a participant, beneficiary</u> or fiduciary

          **(A)**    to **enjoin** any act or practice which <u>violates any provision of this title or the terms of the plan</u>, or

          **(B)**    to obtain <u>other appropriate equitable relief  (i) to redress such violations</u>  or (ii) to enforce any provisions of this title or the <u>terms of the plan</u>. . . .

[bold/underline added].   Plaintiff became disabled on and after September 7, 2001.  The applicable regulations of the Secretary of Labor are the new regulations which took effect for claims filed on and after January 1, 2001.

Defendant admits that the payment of LTD benefits under a Plan are governed by ERISA § 502(a)(1)(B), as Plaintiff has alleged.  However, certain declaratory or injunctive relief is simply not available under 502(a)(1)(B).  As to (a)(1)(B) relief, it is not disputed that the *LTD Plan* is the 'entity' that is liable for the actual payments of the *benefits* rather than the individual fiduciary itself.   That, however, is an argument that makes no technical difference when the plan benefits are simply the benefits paid under an insurance policy issued by Hartford, payable from Hartford's own assets.  As to the applicable "terms" of the Plan or policy, such terms are obviously determinable during the (a)(1)(B)

action since it allows Plaintiff to recover benefits due him under the terms of the plan and to enforce rights per the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. Where insured by an insurance company, the insurance proceeds are obviously paid by the insurance company from its own assets.

Defendant asserts that Everhart[1] bars a plaintiff from seeking relief against a plan fiduciary, including a claim fiduciary (such as Hartford), which performs all of the claim fiduciary functions for and on behalf of the LTD Plan. This is incorrect. Everhart would bar Plaintiff from suing Hartford to recover additional benefits *under (a)(1)(B)*. But Plaintiff has not sued Hartford under (a)(1)(B) and does not allege that Hartford is the responsible entity under (a)(1)(B). The Plan is. However, what the court actually said in Everhart was, "a money judgment for an action brought under § 1132(a)(1)(B) may be enforced "only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity." *Id*. § 1132(d)(2)." Everhart at 753. It also states, ". . . [P]recedent of this circuit, and of every other circuit that has expressly considered the issue, [holds] that § 1132(a)(1)(B) does not permit suits against a third-party insurer to recover benefits *when the insurer is not functioning as the plan administrator*." *Id*. at 756. In any event, double monetary recovery (benefits form the Plan; additional like-benefits from the insurance company) are not recoverable —nor does Plaintiff seek double monetary recovery. The proper entity from which Plan benefits are to be obtained is the Plan.

The year following Everhart, the Northern District of California (Rosenburg v. IBM, 2006 U.S. Dist. LEXIS 41775, 38 Employee Benefits Cas. (BNA) 1202 (N.D. Cal. June 12, 2006)), discussing two other cases, noted that claims related to "record keeping" "could properly be brought" under 502(a)(3), citing Farmers , 2005 U.S. Dist. LEXIS 42706, 2005 WL 1972565 at * 3 (noting the Supreme Court's decision in Varity, which described § 502(a)(3) as a 'kind of a catchall' 'providing appropriate equitable relief from any statutory violation for injuries caused by violations that § 1132 does not elsewhere adequately remedy.'" Varity Corp. v. Howe, 516 U.S. 489, 511, 116 S.Ct. 1065, 134 L.Ed. 2d 130 (1996).

---

[1]Everhart v. Allmerica Fin. Life Ins. Co., 275 F.3d 751, 756 (9th Cir. Cal. 2001), cert denied, 536 U.S. 958, 122 S. Ct. 2662, 153 L. Ed. 2d 836 (2002).

Rosenburg quoted the explanation by the Farmers court:

> plaintiffs should be able to maintain their recordkeeping claim at least at that stage of the proceedings. It reasoned that: "[w]hile other remedies ultimately may exist and [*22] be appropriate, the pleading stage is not the proper stage at which to make that determination." Id. It noted that "if [the employer] has in fact violated ERISA with respect to the present plaintiffs by failing to keep proper records, then an injunction requiring [the employer's] compliance with ERISA may be an appropriate remedy." Id. (citing Varity, 516 U.S. at 515)."\²

Defendant also argues that Plaintiff lacks standing to seek other appropriate equitable relief, including injunctive relief under (a)(3), on behalf of other plan participants. Defendant overstates Plaintiff's claim. First, Plaintiff seeks only his benefits and an application of the terms of his plan under (a)(1)(B), not any other participants' benefits, and seeks "other appropriate equitable relief" to prevent the same administrator's fiduciary breaches in the future, if and when the Court reinstates his claim and grants past-benefits. According to Varity, Plaintiff may seek such individual relief under (a)(3). Varity, 516 U.S. at 515. (ERISA beneficiaries are authorized to sue for "'appropriate' equitable relief" for breach of fiduciary obligations where ERISA does not "elsewhere provide[] adequate relief for a beneficiary's injury.") If such relief sought by Plaintiff should inure to the benefit of other claimants under the LTD Plan, that is beside the point. Plaintiff's suit is not brought for the reason of specifically seeking relief on behalf of any other participant. But Plaintiff may nevertheless seeks declaratory relief that a plan administrator of the Plan (the plan administrator which was subject to the requirements of, and was responsible for compliance with the claims regulations at 29 C.F.R. 2560.503-1 —i.e., Hartford) breached its fiduciary duties and is subject to being enjoined from further such breaches.

While Varity made available individual relief through (a)(3) for the first time, the decision was limited in scope in that it does not contemplate either §502(a)(1)(B) or §502(a)(3) claims as mutually exclusive. Defendant would have this Court dismiss Plaintiff's §502(a)(3) allegations and prayer for other equitable relief that the court ultimately determines may be "appropriate" merely because he also

---

² The Rosenberg court also discussed Delucchi v. Life Ins. Co., 2005 WL 146902 (N.D. Cal. 2005), where the plaintiff alleged both a claim for benefits under § 1132(a)(1)(B), and a claim for breach of fiduciary duty under § 502(a)(3), and because Delucchi had properly stated a claim for benefits, she "already had a remedy under § 1132(a)(1)(B) for [that] claim for benefits." —i.e., she did not need a claim under (a)(3) for benefits. Id. at * 1. That is not what Plaintiff in the instant action has alleged.

brings a §502(a)(1)(B) claim for his benefits, suggesting that these two sections are mutually exclusive under Varity. This is simply an not accurate interpretation of Varity. The Supreme Court did not grant *certiorari* in Varity to review that issue, let alone make such a holding. Varity at 491.[3]

Again, Varity held that individual beneficiaries harmed by an administrator's breach of fiduciary duties may properly seek relief from the administrator under §502(a)(3). *Id*. at 516 U.S. at 492. As mentioned above, the Supreme Court commented in dictum that §502(a)(3) is a "catchall," designed to provide a "safety net, offering appropriate equitable relief for injuries caused by violations that §502 does not elsewhere adequately remedy." *Id*. at 512. This language was designed in anticipation of benefit claims inappropriately "repackaged" as fiduciary breach claims. *Id*. at 512-515. It does not bar remedies for fiduciary breach where benefits are also at issue and where (a)(1)(B) provides the benefits but provides no remedy for such fiduciary breaches.

In its discussion of potentially "repackaged claims," the Varity Court however never specifically barred concurrent §502(a)(3) and §502(a)(1)(B) claims within the same suit. *Id*. Several *amicus curiae* briefs were filed in Varity to flesh out the allegedly dire circumstances of the potential repackaging of claims. The Varity Court dismissed these concerns, stating "[t]he concerns that *amici* raise seem to us unlikely to materialize." *Id*. at 514. In other words, it is not necessary to seek an injunction under (a)(3) to pay benefits under the Plan when the remedy of benefits under the plan is taken care of through (a)(1)(B). While it is possible these sections *may* involve duplicative facts when pled within one complaint, this is not the rule announced in Varity. In fact, there is no language is Varity that creates the

---

[3] In Varity, the only thing the Plaintiff's were seeking were pension benefits, but because they had been fraudulently duped by employer misrepresentations to transfer their employment to a new subsidiary and thereby become participants in the assetless subsidiary's Plan, no "benefits" were available from that plan, so a claim under 502(a)(1)(B) would afford them no relief. The court found that *individual* equitable relief was available through 502(a)(3), and although it was unavailable in the form of benefits from the assetless plan, the court fashioned "appropriate equitable relief" by reinstating the employees into their original plan. The 'benefits' were provided by the original plan. In fact, two factors in particular appear to have swayed a majority of the Supreme Court to read the statute to authorize claims for individual equitable relief against fiduciaries. One is above. The second is that the "plain language" of the statute works against a strict construction of ERISA. The majority pointed out, "the literal language of the statute" authorized "appropriate equitable relief" for "any" statutory violation. Varity, 116 S.Ct. at 1077-78, 1079. In applying ERISA's intentionally broad remedial scheme, the court must be mindful of ERISA's basic purposes, which are "broadly protective" of participants. e.g. John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank, 114 S.CT. 517, 524 (1993). To read an "either"/"or" into § 502 [i.e., either (a)(1)(B) or (a)(3), when the claim for relief itself is different], thwarts the underlying "broadly protective" policy.

rigid, *per se* rule that Defendant suggests.  Rather the <u>Varity</u> court only instructs that in order to discern between "appropriate" versus *duplicative* §502 claims (see duplicative, mentioned at lines 16-18 above), a lower court will ultimately need to determine whether further equitable relief in a case is "appropriate." *Id.* at 512-515.  By no means did the court explicitly or implicitly rule that a plaintiff could not bring concurrent §§502(a)(1)(B) and (a)(3) claims. [4] The Supreme Court expressly rejected such theory in 2002. The Supreme Court explained at footnote 5, in <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204, 221, 151 L. Ed. 2d 635, 650, 122 S. Ct. 708, 719 (2002):

> <u>Varity Corp. v. Howe</u>, 516 U.S. 489 (1996), upon which petitioners rely, is not to the contrary. In <u>Varity Corp.</u>, we explained that 502(a)(3) is a catchall provisio[n] that act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that 502 does not elsewhere adequately remedy. *Id.,* at 512. <u>Thus, we concluded that 502(a)(3) authorizes lawsuits by beneficiaries for individualized equitable relief for breach of fiduciary obligations, notwithstanding the petitioners argument that such relief is not appropriate because 502(a)(2) and 409 of</u> ERISA specifically address liability for breach of fiduciary duty and preclude individualized relief. *Id.,* at 507 515. In <u>Varity Corp.</u>, however, it was undisputed that respondents were seeking *equitable* relief, and the question was whether such relief was appropriate <u>in light of the apparent lack of alternative remedies.</u> *Id.,* at 508. <u>Varity Corp. did not hold, as petitioners urge us to conclude today, that 502(a)(3) is a catchall provision that authorizes *all* relief that is consistent with ERISAs purposes and is not explicitly provided elsewhere.</u> To accept petitioners argument is to ignore the plain language of the statute, which provides fiduciaries with only equitable relief.

---

[4]Since an *individual* claim to recover relief for a *breach of fiduciary duty* can only be brought under ERISA § 502(a)(3), the only <u>*monetary*</u> relief that can be recovered, if it doesn't fit within 502(a)(1)(B) must, according to <u>Varity,</u> fit within § 502(a)(3)'s category of "appropriate equitable relief" which <u>Varity</u> was able to fashion. For instance, equitable awards may include restitution, disgorgement, "make whole" injunctions, and other relief, which although classified as equity, may amount to an award of money, such as in the case of "interest" awarded on unpaid benefits as a form of preventing unjust enrichment to the administrator and "making the Plaintiff whole".

The <u>Varity</u> scenario is completely dissimilar to Dr. Kimberly's instant action. He is seeking his benefits –the only monetary relief– from the Plan under (a)(1)(B). Frankly, as a matter of common sense, as mentioned above, a Plaintiff simply would not resort to 502(a)(3) in a claim for benefits under some "equitable theory" if he had a benefits source readily available under 502(a)(1)(B). The reason for this is that source of benefits under 502(a)(1)(B) are usually readily apparent and available (i.e., from a policy or self–funded Trust]. If they are sought under (a)(3), the reason is because they are not available because the employee through some error was never made a participant, or was duped into transferring employment (like in Varity), and therefore could only be granted equitable relief that might result in instatement or reinstatement that would ultimately produce the benefits coverage sought.  Simply put, a close reading and thorough understanding of <u>Varity</u> does not stand for what Defendant urges.  If it did, such restriction would be readily apparent from the face of the statute.  It is not.

In Black v. Long Term Disability Ins., Milwaukee World Festivals, Inc. (& Standard Ins. Co)., 373 F.Supp.2d 897 (E.D.Wisc. 2005) (6/21/05), the employee alleged that defendants wrongfully denied benefits to her and that the administrator breached its fiduciary duty to her by failing to properly review her claims. The court held that the administrator, as in the Ninth Circuit, was not a proper party to the employee's *(a)(1)(B) claim* (because the only proper defendant to such a claim was the Plan[5]), but that the employee's breach of fiduciary duty claim was not subject to dismissal because, whether or not an ERISA plaintiff could not prevail on *both,* a claim for benefits under (a)(1)(B), *and* a breach of fiduciary duty claim under (a)(3), it was inappropriate to dismiss the (a)(3) claim as duplicative at the motion to dismiss stage of a case. The court in Black pointed out that according to the Second Circuit,

> under Varity Corp., a plaintiff could prevail on both claims but that in such case equitable relief pursuant to § 1132(a)(3) would "normally" not be appropriate. Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 89 (2d Cir. 2001). The court stated that "ultimately, we believe that the determination of 'appropriate equitable relief' rests with the district court should plaintiffs succeed on both claims . . . [and that] the district court's remedy is limited to such equitable relief as is considered appropriate." Id. at 89-90.
>
> I need not decide at this early stage of the present case whether plaintiff may prevail on both her claim for benefits and her breach of fiduciary duty claim. However, even assuming that an ERISA plaintiff may not prevail on a claim for benefits under § 1132(a)(1)(B) and a breach of fiduciary duty claim under § 1132(a)(3), a district court should generally [*902] not dismiss a § 1132(a)(3) claim as *duplicative of a claim for benefits* at the motion to dismiss stage of a case, and I decline to do so in the present case. I reach this conclusion for several reasons.

Black, at 901-902.

The reasons given by the Black court include the example,

> if a fiduciary denied a claim for benefits because of a personal animus toward the plaintiff or for some other improper reason but used a plausible interpretation to justify its action, the plaintiff should not be barred from bringing an action under § 1132(a)(3)." (Citing Jeffrey Lewis & Dan Feinberg, "Varity Corp. v. Howe: The Plaintiff's Perspective," 5 No. 2 ERISA Litig. Rep. 3, 7, June 1996.) The Black court then discussed why a claim for both an (a)(1)(B) remedy (the denied benefits) and (a)(3) remedy should co-exist:

---

[5]Citing Blickenstaff v. R.R. Donnelley & Sons Co., 378 F.3d 669, 674 (7th Cir. 2004)(citing Neuma, Inc. v. AMP, Inc., 259 F.3d 864, 872 n.4 (7th Cir. 2001) and Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1490 (7th Cir. 1996)).

> In the present case, plaintiff seeks benefits  but also alleges that Standard violated ERISA regulations and plan terms by engaging in a number of improper practices such as permitting claim examiners to decide appeals of their own decisions and misclassifying claimants' occupations, <u>and she seeks injunctions barring such practices</u>.  <u>Plaintiff could not pursue these allegations or obtain appropriate relief in the context of her claim for benefits. This is so both because of the limited nature of a claim for benefits and because Standard is no longer a party to that claim</u>. Thus, if I dismissed her breach of fiduciary duty claim on a Rule 12(b)(6) motion, I would effectively deny her the opportunity to prove a possibly meritorious claim.  As discussed below, such a result would be inconsistent both with *Varity Corp*. and with federal pleading rules.

Id. at 901-902.

The Court corrected Standard's erroneous interpretation of <u>Varity</u>, explaining that, 1) Varity "does not deal with "pleading" but with "relief"\[6]; 2) while equitable relief is "normally" not needed in addition to (a)(1)(B) benefits, <u>Varity</u> does not state it is "never" inappropriate\[7]; 3) <u>Varity</u> does not overrule the federal pleading rules of Fed.R.Civ.P. 8(c) which allow pleading claims "alternatively or hypothetically, either in one count . . . or in separate counts" (quoting 8(c)).  <u>Id</u> at 902-903.  The court then concludes that dismissal of an "(a)(3) claim as duplicative at the pleading stage of a case would, in effect, require the plaintiff to elect a legal theory and would, therefore, violate Rule 8(c)."

The final important reason stated by the court in <u>Black</u> is:

> Finally, [**14] to interpret Varity Corp. as requiring a court to dismiss an ERISA plaintiff's breach of fiduciary duty claim prior to developing the facts of the case runs counter to one of the bases of the decision -- the purposes of ERISA. 516 U.S. at 513 (<u>stating that the statute seeks "to protect . . . the interests of participants . . . and beneficiaries . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries . . . and providing for appropriate remedies . . . and ready access to Federal courts</u>")(quoting ERISA § 2(b)).

In 2007, the Northern District of California held that a plaintiff may proceed on both a wrongful denial and equitable relief theory if the plaintiff  "allege[s] wrongful conduct that, although not affecting

---

[6] " <u>Varity Corp</u> does not hold that when an ERISA plaintiff alleges facts supporting both a § 1132(a)(1)(B) and a § 1132(a)(3) claim, a court must or should grant a defendant's Rule 12(b)(6) motion to dismiss the latter claim. [**13]  <u>Varity Corp</u>. did not deal with pleading but rather with relief. 516 U.S. at 515 (stating that "where Congress elsewhere provided adequate relief for a beneficiary's injury . . . equitable relief . . . normally would not be 'appropriate'"). Black, at 902.

[7] "Further, to the extent that <u>Varity Corp</u>. indicates that duplicative relief is inappropriate, it uses the word "normally" not "never."  Id. And, as discussed, a court is unlikely to be able to discern at the pleading stage of a case both whether the relief provided in § 1132(a)(1)(B) is "adequate" and whether the case is a "normal" one. " <u>Black</u>, at 902.

all plan participants, does go beyond the mere wrongful calculation of benefits." Ehrman v. Standard Ins. Co., 2007 U.S. Dist. LEXIS 35124, 2007 WL 1288465, *4 (N.D. Cal. May 2, 2007).  Because the plaintiff in Ehrman alleged "some form of self-dealing through the intentional adoption of biased claim practice and procedures relating to offsets which are systematically designed to increase the financial profitability of the Defendant" — an allegation that the court noted could not be remedied by damages — the court denied the defendant's motion to dismiss the concurrent (a)(3) claim.

Consistently, the same court in Finkelstein v. Guardian Life Ins. Co. of Am., 2007 U.S. Dist. LEXIS 92053 (N.D. Cal. Dec. 5, 2007), after discussing Ehrman, explained:

> Just so here, Finkelstein has set forth allegations that go above and beyond the mere denial of benefits. For example, plaintiff alleges that Guardian systematically denies legitimate claims in an attempt to boost profits, [ ] unreasonably fails to investigate the basis of their denials of claims, id. [ ] and has unreasonably failed to adopt, implement and apply reasonable or proper standards for investigating and processing claims, id. [ ]. As in Ehrman, "it may turn out to be the case, [*13] even if Plaintiff ultimately proves a breach of fiduciary duty, that this Court concludes it is not appropriate to provide equitable relief beyond that provided for in § 1132(a)(1)(B) under the carefully integrated civil enforcement provisions that Congress enacted in ERISA." [Ehrman] 2007 U.S. Dist. LEXIS 35124, 2007 WL 1288465 at *5. That determination, however, must be saved for a later stage in the proceedings.

Here, Plaintiff's allegations go above and beyond a mere denial of benefits and would warrant injunctive relief against any administrator acting through or on behalf of the Plan, including Hartford, —or even against Hartford individually if the Court deems it necessary for Plaintiff to amend his First Amended Complaint to name Hartford individually for a remedy against Hartford under (a)(3), to prevent such violations of ERISA and Plaintiff's rights under ERISA.  (Plaintiff has addressed the requirements to obtain injunctive relief separately, below.)

Also in 2007, the district court in the Northern District of New York held that alternative claims, including the Plaintiff's suit for benefits under both (a)(1)(B) and (a)(3),  can co-exist at the pleading stage.  Fredericks v. Hartford Life Ins. Co.,  Services Medical Group., 2007 U.S. Dist. LEXIS 23666 (N.D.N.Y. March 30, 2007).

Similarly, defendants in Aikens v. U.S. Transformer, Inc., 2008 U.S. Dist. LEXIS 19285 (D. Idaho Mar. 11, 2008) made the same argument as Defendant makes in the instant case —"that plaintiffs' claims under 29 U.S.C. § 1132(a)(3) fail as a matter of law, because plaintiffs' claims for benefits pursuant to

29 U.S.C. § 1132(a)(1)(B) and for breach of fiduciary duty pursuant to 29 U.S.C. 1132(a)(2) provide the exclusive remedy for Plaintiffs' claimed injuries . . . ." Aikens at *44.  The court acknowledged that a right to equitable relief under (a)(3) requires the act complained of have been performed by a fiduciary, and that it be a breach of fiduciary duty (violating an ERISA-imposed fiduciary obligation), while acting in a fiduciary capacity (citing Varity and  Mathews v. Chevron Corp., 362 F.3d 1172, 1178 (9th Cir. 2004).  The Aikens court cited footnote 5 in Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. at 221 n.5 (2002) (quoted at page 9 above), and Varity Corp., 516 U.S. at 512 and, like all cases discussing Varity, recognized that (a)(3) acts ". . . as a safety net, offering appropriate equitable relief for injuries caused by violations that [29 U.S.C. § 1132] does not elsewhere [such as under (a)(1)(B) or (a)(2)] adequately remedy." Id. at *44-45. "Compensatory damages are not a form of equitable relief available under 29 U.S.C. § 1132(a)(3)" (citing Mertens v. Hewitt Assocs., 508 U.S. 248, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993)) and that "an estoppel claim cannot result in a payment of benefits inconsistent with the written plan" and that in any event, "such claims" are covered under (a)(1)(B) as claims for benefits. Again, Plaintiff has not sued under (a)(3) to compel the payment of benefits.  That claim is Plaintiff's (a)(1)(B) claim.

    As Defendant has argued in the instant motion, the Aikens defendants relied upon  Ford v. MCI Communs Corp. Health & Welfare Plan, 399 F.3d 1076, 1083 (9th Cir. 2005), arguing that a plaintiff who asserts specific claims under 29 U.S.C. §§ 1132(a)(1)(B) or (a)(2) cannot obtain relief under 29 U.S.C. § 1132(a)(3).  The court in Aikens rejected defendant's reasoning.  It explained:

> [A] close read of Ford shows that the Court first dismissed the plaintiff's claims against a defendant as a claims administrator or fiduciary before dismissing the "catch-all" claim and, thus, the lawsuit against that defendant. The decision states:
>
>> Ford failed to raise a material question of fact regarding Hartford's liability under ERISA, either as a claims administrator or a fiduciary. Because specific claims were asserted [and dismissed] under discrete ERISA provisions, the 'catchall' provision is not available as a source of relief.

Id. at 1083.
In the instant case, Plaintiffs seek relief under 29 U.S.C. § 1132(a)(3) that is unavailable under either 29 U.S.C. §§ 1132(a)(1)(B) and (a)(2). Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiffs  [*47] seek the following equitable

relief: . . . (b) a declaration of breach of fiduciary duties; . . . and (e) an injunction against Leagjeld, Kampshoff, and Smith from committing further ERISA violations. . . . Such equitable relief is not available under 29 U.S.C. § 1132(a)(1)(B), which applies to benefits due under a plan, nor is such relief available under 29 U.S.C. § 1132(a)(2), which inures to the benefit of the plan. Therefore, Plaintiffs' claims pursuant to 29 U.S.C. § 1132(a)(3) are appropriate.

Id.

In Cyr v. Reliance Std. Life Ins. Co., 525 F. Supp. 2d 1165, 2007 U.S. Dist. LEXIS 87597 (C.D. Cal. 2007), the plaintiff sued under ERISA seeking additional LTD benefits based on an adjusted salary and declaratory relief clarifying her rights to future benefits against her former employer Channel Technologies, Inc. ("CTI") and CTI's insurer, Reliance Standard Life Insurance Company ("RSL"). Cyr also alleged equitable estoppel against RSL and CTI and breach of fiduciary duty against RSL. The Court had dismissed RSL as a defendant to the (a)(1)(B) claim on June 8, 2007, on the ground that it was not a proper defendant under ERISA, but later overturned that finding on reconsideration, finding "that RSL is in fact a proper defendant to this cause of action."

Cyr argues that because "RSL admits that it performed virtually all, if not all, of the services that a plan administrator performs," it functions as a plan administrator and thus, under Everhart, is a proper defendant. (Cyr Proper Party Mot. 9.) The Court agrees.
. . .

Further, the Ninth Circuit's decision in Everhart left room for suits against insurers so long as they are functioning as the plan administrator. See Everhart, 275 F.3d at 756 (holding that § 1132(a)(1)(B) does not permit suits against insurers who are not "functioning as the plan administrator" but not explaining how to decide when an insurer is so functioning). Cyr notes that RSL "provided plan documents to participants, received benefit claims, evaluated them and made benefit determinations, interpreted the terms of the plan, and made and administered benefit payments." . . . RSL does not contest these assertions; indeed, this entire case revolves around the fact that RSL is claiming the right to interpret the plan, and is urging an interpretation of the plan that would preclude Cyr's claims.

[*1173] Instead, Defendant argues that Ford v. MCI Communs. Corp. Health & Welfare Plan, 399 F.3d 1076 (9th Cir. 2005), forecloses Cyr's argument that RSL is a proper defendant. In Ford, the court considered an ERISA case for benefits in which the benefits plan had designated Hartford Insurance/Hartford Life as the claims administrator but not as the plan administrator. The court rejected the plaintiff's argument that Hartford could be sued under 1132(a)(1)(B) because it "is the plan administrator because it had discretionary authority to determine eligibility

for benefits and was functioning as the plan administrator." Id. at 1081-82.

Ford is distinguishable. First, any comments the Ninth Circuit made about the propriety of suing insurers under § 1132(a)(1)(B) were dicta because the decision is not clear about 13 [sic] whether Hartford was the insurer, as opposed to merely the claims administrator. More importantly, [**19] in Ford the plan in fact designated a plan administrator - MCI. Here, the parties agreed at the November 5, 2007 hearing on these motions that as of 2000 -- the time of "the facts giving rise to the claim" -- all of the plan documents were "silent concerning who the plan administrator [was]." . . . This lack of clarity is confirmed by the fact that during the administrative appeal, Cyr's attorney opined to RSL that he could not "determine from the subject Long Term Disability Policy issued by RSL whether RSL is the plan administrator or whether Channel Technologies, Inc.is the plan administrator."
. . .

These distinctions are important. In Ford, even if Hartford had a great deal of control and decision making authority, MCI was the ultimate administrator of the benefit plan. Further, there is no indication that Hartford was responsible for funding any benefits due. The buck stopped, so to speak, with MCI. It therefore made sense to limit liability to MCI because it held ultimate responsibility, and presumably bore the ultimate responsibility for paying out the benefits. Hartford, for all its responsibility, in the end was in some way subordinate to MCI.

Ford may have precluded suits against entities who have been delegated "discretionary authority," but it says nothing about cases where the entity in question holds ultimate authority on all matters relating to plan benefits. Reading Ford to prohibit suits against an entity with as broad authority as RSL asserts here, simply because the plan fails to name any administrator, leads to the anomalous conclusion that even if Cyr is entitled to her benefits, she cannot sue the only entity who is ultimately responsible [**22] for providing them. 7 Such a ruling would allow an end run around ERISA's statutory purpose of protecting employee benefits. See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 830, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003).

FOOTNOTES
7 This conclusion is buttressed by Federal Rule of Civil Procedure 19's directive that a person or entity should be joined as a party if, inter alia, "in the person's absence complete relief cannot be accorded among those already parties." Fed. R. Civ. P. 19(a)(1).

Cyr, at 1173-1174.  The court in Cyr found that another recent decision from the Northern District of California supported its conclusion (citing  Moody v. Liberty Life Assur. Co., 2007 U.S. Dist. LEXIS 32837, 2007 WL 1174828 (N.D. Cal. Apr. 19, 2007). The court noted that,

In <u>Moody [ ]</u>, the court granted the plaintiff leave to amend a §
1132(a)(1)(B) claim against the third party insurer with additional
allegations and evidence showing that the insurer was in fact functioning
as plan administrator. The court noted that under some "factual
circumstances [the insurer] could be considered 'co-plan administrators.'"
2007 U.S. Dist. LEXIS 32837, [WL] at *4. In other words, the court did
not read <u>Ford</u> as precluding the acknowledgment of *de facto* plan
administrators in every situation.

Here, however, Dr. Kimberly has alleged Hartford was the Plan's claim fiduciary, a fiduciary
under ERISA, and acted as one of the Plan's plan administrators as reflected by its duties and the
commands of the claim regulations. 29 C..F.R. 2560.503-1 and subsections.  By the terms of the new
regulations, since Hartford assumed all of the functions of the "Plan Administrator"(29 C.F.R. 2560.503-
1(a)-(j) (2002)), it is undisputedly a "Plan Administrator" of the LTD Plan for purposes of the benefits
denial and claim termination and this lawsuit.  Hartford did everything; it decided everything.  And it
decided not to pay.  And it kept the benefits it would have had to pay had it not terminated Plaintiff's
claim. (This also would have allowed Hartford to release the reserves it kept on hand to pay the life of
the claim).  It is Hartford that funds the benefits.

The <u>Ford</u> case involved a claim that predated the new regulations.  The Ninth Circuit in <u>Ford</u> did
not address the change in the regulations. The regulations at the time of the Ford claim speak in terms
of the decision maker being a named plan "fiduciary"[8])

The new regulations reflect that the Secretary considers the functions described in the regulations

---

[8]The former regulations 29 C.F.R. 2560.503-1(a) - (i) (1999) merely state that if an insurance
company makes the decision on appeal of a denial, it is the "appropriate named fiduciary" for
conducting the final review.  **29 C.F.R. § 2560.503-1**
**"(f) Content of [initial] notice"**"A plan administrator, <u>or, ...insurance company</u>. . . shall provide to
every claimant who is denied a claim for benefits written notice setting forth . . . .";
**"(g)(2)** To the extent that benefits under an employee benefit plan are provided or administered *by an
insurance company, insurance service, or other similar organization* which is subject to regulation
under the insurance laws of one or more States, the claims procedure pertaining to such benefits may
provide for review of and decision upon denied claims by such company, service or organization.  <u>In
such case, that company, service, or organization shall be the "*appropriate named fiduciary*" for
purposes of this section.</u>; " (ital/underline added);
**"(h) Decision on review.** (1)(i) A decision by an *appropriate named fiduciary* shall be made
promptly, . . ."

as being carried out by a "plan administrator." The words, "or insurance company" were removed.[9]

Moreover, the Ninth Circuit in <u>Ford</u> took the position that the fiduciary duties under ERISA § 404(a) do not apply to insurer plan administrators or claims administrators. The Supreme Court disagrees. It very recently put that issue to rest, emphasizing *that MetLife* (which was the named defendant, the insurer, claim decision maker and payor, and the petitioner to the Supreme Court), *was indeed subject to the express fiduciary duties under ERISA, including but not limited 404(a)'s "solely in the interest of and "exclusive purposes" duties.* <u>Metropolitan Life Ins. Co. v. Glenn</u>, 128 S. Ct. 2343, 2008 U.S. LEXIS 5030 *17, 76 U.S.L.W. 4495, 21 Fla. L. Weekly Fed. S 393 (U.S. 2008) (June 19, 2008).[10] The Supreme Court also referred to the "plan administrator" interchangeably as that administrator that conducted the claim investigation and decision making. Id. at *15-16 (stating, "The answer to the conflict question is less clear where (as here) the plan administrator is not the employer itself but rather a professional insurance company.")[11] It certainly left room for the common occurrence

---

[9] **29 C.F.R. 2560.503-1 (2002):** "**(a)** . . . the *plan administrator* shall notify the claimant, in accordance with paragraph (g) of this section, of the plan's adverse benefit determination . . .";
**(f)(3) "Disability claims**. In the case of a claim for disability benefits, *the plan administrator* shall notify the claimant, in accordance with paragraph (g) of this section, of the plan's adverse benefit determination. . .";
**"(g) Manner and content of notification of benefit determination**. (1) Except as provided in paragraph (g)(2) of this section, *the plan administrator* shall provide a claimant with written . . ."
"**(i)** Timing of notification of benefit determination on review. (1) In general. (i) Except as provided in paragraph . . . **(i)(3)** [disability claims] of this section, *the plan administrator* shall notify a claimant in accordance with paragraph (j) of this section of the plan's benefit determination on review . . . If *the plan administrator* determines that an extension of time for processing is required, written notice of the extension shall be furnished to the claimant . . ."
(**j) Manner and content of notification of benefit determination on review**. The *plan administrator* shall provide a claimant with written . . .." (Ital. Added).

[10]At *3: "For one thing, the employer's own conflict may extend to its selection of an insurance company to administer its plan. For another, ERISA imposes higher-than-marketplace quality standards on insurers, requiring a plan administrator to "discharge [its] duties" in respect to discre-tionary claims processing "solely in the interests of the [plan's] participants and beneficiaries," 29 U.S.C. § 1104(a)(1); underscoring the particular importance of accurate claims processing by insist-ing that administrators "provide a 'full and fair review' of claim denials," *Firestone, supra, at* 113, 109 S. Ct. 948, 103 L. Ed. 2d 80; and supplementing marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B)."

[14] Metropolitan Life Insurance Company (MetLife) is an administrator and the insurer of Sears, Roebuck & Company's long-term disability insurance plan, which is governed by [ERISA]. The plan gives MetLife (as administrator) discretionary authority to determine the validity of an employee's benefits claim and provides that MetLife (as insurer) will pay the claims."

1  under the new regulations —that of co-plan administrators — one being the employer plan sponsor and

2  one being a plan administrator subject to the requirements of the Secretary's regulations which are

3  expressly incorporated into ERISA § 503.  No where did the Supreme Court intimate that MetLife was

4  not a proper party in an ERISA claim for benefits.

5      Finally, here, plan sponsor SRSMG was not involved in making any decisions to grant disability

6  or deny disability or to investigate the claim, or to pay benefits under the Plan.  Hartford orchestrated and

7  arranged for all 'reviews' of the question of disability under the LTD Plan and communicated both the

8  initial and final denial letter.  By the express terminology under the applicable Regulations for claims

9  filed after January 2001, as here, Hartford is a "plan administrator" of the Plan  29 C.F.R. 2560.503-1(a)-

10  (j). (see quoted sections at footnote 9 above).

11      This year, the Third Circuit held that even if an insured is entitled to full benefits under (a)(1)(B),

12  an employee can still sue a plan administrator as a fiduciary for failing to properly administer the claim.

13  Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d 300 (3rd Cir. 2008) (1/29/08).

14      Last month, the trial court in the Tenth Circuit, Galutza v. Hartford Life & Accident Ins. Co., 2008

15  U.S. Dist. LEXIS 45781 (N.D. Okla. June 12, 2008),  rejected the same type of request by Hartford as

16  Defendant (through Hartford) advances here, and the court denied Hartford's motion for summary

17  judgment on the concurrent (a)(3) breach of fiduciary claim against Hartford.  The court's reasoning in

18  Galutza is the same as in Black, supra, holding that 1) the  Federal Rules of Civil Procedure allow a party

19  to "join two claims even though one of them is contingent on the disposition of the other . . ."

20  Fed.R.Civ.P. 8(b); 2) procedurally it was too early to determine "as Varity requires -- whether 'no other

21  adequate ERISA relief is available' under § 1132(a)(1)(B)," and in fact would be unable to do so "until

22  after the parties brief their respective positions on the (a)(1)(B) claim, and this court determines whether

23  other adequate ERISA relief is available.  As did the court in Black, the Tenth Circuit court in Galutza

24  looked to the Second Circuit's opinion in Devlin v. Empire Blue Cross and Blue Shield, 274 F.3d at 89

25  which not only held that Varity "did not eliminate a private cause of action for breach of fiduciary duty

26  when another potential remedy is available", permits joinder of "two possibly inconsistent claims"

27  (although an (a)(1)(B) and an (a)(3) claim or remedy are not necessarily inconsistent), but "permits the

28  grant of "'appropriate equitable relief' in addition to other ERISA relief when a plaintiff succeeds on both

claims." The <u>Galutza</u> court stated it was not suggesting that a plaintiff should be permitted to obtain

relief against the same Defendant under both claims, but certainly concluded

> "that Galutza ought to be permitted to join the two claims until such time as it [*9] may be determined whether § 1132(a)(1)(B) affords him adequate relief. This "middle ground" would appear to be the proper approach in cases where the plaintiff's allegations in the two claims appear to differ, and where the plaintiff does not seek the same relief under both claims."
> . . .
> The approach suggested by Hartford -- to disallow Galutza's claim for equitable relief under § 1132(a)(3) where other ERISA relief is potentially available to him -- would not only deprive a plaintiff of the right to plead alternative and inconsistent claims for relief, it would mandate the premature dismissal of a claim for equitable relief even in the rare case where it later becomes clear that no other adequate ERISA relief is available. 5 This may be such a case, as Galutza's [*11] breach of fiduciary duty claim appears to contain different substantive elements than those which may be presented in the context of his (a)(1)(B) claim. For instance, as noted in footnote 2 above, Galutza's counsel argues that a fiduciary charged with acting in the interests of plan participants could reasonably have been expected to tell Galutza that he could "withdraw" his appeal until such time as he had obtained the deposition of the treating physician, so long as the renewed appeal was presented within the original 180-day appeal period. The parties have not briefed the issue of whether this argument may be presented within the context of Galutza's (a)(1)(B) claim. If it cannot, a remedy for the alleged breach of that fiduciary duty would be unavailable under (a)(1)(B), and hence legally inadequate under Varity. Until the issue is briefed and decided, the (a)(3) claim should remain as an alternative, contingent claim.

Approximately three months ago, the Northern District of California expressly declined to dismiss

the breach of fiduciary claim against CNA Financial Corporation (a company acquired by Hartford, thus

making Hartford a party defending the suit. <u>Caplan v. CNA Fin. Corp.</u>, 544 F. Supp. 2d 984, 2008 U.S.

Dist. LEXIS 28290 (N.D. Cal. 2008) (Apr.4, 2008).  In <u>Caplan</u>, Hartford was represented by the same

counsel representing Defendant in the present case.  Based on (a presumably similar or same) briefing

by Mr. Rolstad in that case, the court nevertheless explained its refusal to preclude a concurrent (a)(1)(B)

and (a)(3) claim even up to summary judgment determination:

> In a previous order denying Defendants' motion for summary judgment, the Court declined to determine at that early juncture whether an award of benefits under § 1132(a)(1)(B) would be an adequate remedy, or whether the injunctive relief Plaintiff seeks is available. Now, on a fuller record, the Court finds that § 1132(a)(1)(B) provides Plaintiff with an adequate remedy. Plaintiff has not shown that he or other Plan participants stand to face irreparable harm if injunctive relief is not granted; section

19        Pltf's Oppo to Def's Mot.to Strike/Dismiss

1132(a)(1)(B) will continue to provide all Plan participants, including Plaintiff, with the opportunity to challenge Hartford's wrongful denial of benefits.

In any [**26] event, an injunction prohibiting Hartford from contracting with UDC or removing Hartford as the Plan's administrator would not be appropriate under the circumstances. Plaintiff has cited no case in which a court has granted such far-reaching injunctive relief under circumstances similar to those here.

It appears that Defendant's argument about the federal elements for injunctive relief that is raised in the instant case tracks that which Defendant argued in Caplan.  It would appear that this Court should grant Dr. Kimberly leave to amend his First Amended Complaint to specifically name Hartford as a defendant and seek relief under 502(a)(3) against Hartford itself instead of just seeking to bind any fiduciary or administrator acting on behalf of or administering the Plan (including Hartford) to the relief Ordered against the Plan.  In contrast to the relief sought individually against Hartford in Caplan, Dr. Kimberly has not requested that this Court prohibit the LTD Plan's claim fiduciary/plan administrator (Hartford) from contracting with its frequently-utilized "University Disability Consortium" (UDC) (utilized in both Caplan and the instant case and many many others[12]), or removing Hartford as the LTD

---

[12]While Plaintiff understands that the following are a tiny sampling of cases in which Hartford used UDC to effect a benefits denial or termination (since many undoubtedly never make it to court and/or have no reported decision), this list reflects the joint efforts of the two entities in benefits denials. Whitley v. Hartford Life & Accid. Ins. Co., 2008 U.S. App. LEXIS 1901 (4th Cir. Jan. 29, 2008);  Caplan v. CNA Fin. Corp., 544 F. Supp. 2d 984, 2008 U.S. Dist. LEXIS 28290 (N.D. Cal. 2008); Hanusik v. Hartford Life Ins. Co., 2008 U.S. Dist LEXIS 7520 (E.D. Mich. Jan. 31, 2008); Hicklin v. Hartford Life & Accident Ins. Co., 2007 U.S. Dist. LEXIS 96059 (C.D. Cal Dec. 2007); Rabuck v. Hartford Life & Accid. Ins. Co., 2007 U.S. Dist LEXIS 80246 (W.D. Mich. 10/30/2007); Frei v. Hartford Life Ins. Co., 2006 WL 563051 (N.D. Cal. Mar 07, 2006); Dorholt v. Hartford Life and Acc. Ins. Co., 2006 WL 475280 (D. Minn. Feb 28, 2006); DeLorenzo v. Hartford Life and Acc. Ins. Co., 2006 WL 485119 (M.D. Fla. Feb 28 2006); Goldman v. Hartford Life and Acc. Ins. Co.,417 F. Supp. 2d 788 (E.D. La. Feb 23, 2006); Baca-Flores v. Hartford Life and Acc. Ins. Co., 2006 WL 286868 (E.D. Mich. Feb 06, 2006); Work v. Hartford Life and Accident Ins. Co., 2005 WL 3071704 (E.D. Pa. Nov 15 2005); Wright v. R.R. Donnelly & Sons Co. Group Benefits Plan, 402 F.3d 67 (1st Cir. 2005); Sollon v. Ohio Cas. Ins. Co., 396 F. Supp. 2d 560 (W.D. Pa. 2005); Krohmer-Burkett v. Hartford Life and Acc. Ins. Co., 2005 WL 2614503 (M.D. Fla. Oct 14, 2005); Lewis v. ITT Hartford Life and Acc. Ins. Co., 295 F.Supp.2d 1053 (D. Kan. Oct 11, 2005); Lunsford v. Hartford Life & Acc. Ins. Co., 2005 WL 2088423 (S.D. W. Va. Aug 26, 2005); Collinsworth v. Hartford Life and Acc. Ins. Co., 2005 WL 1189841 (N.D. Tex. May 19, 2005); Corkill v. Hartford Life and Acc. Ins. Co., 2005 WL 1139915 (N.D. Fla. Apr 28, 2005); Cardin v. Hartford Life & Acc. Ins. Co., 366 F. Supp. 2d 692 (C.D. Ill. Apr 14, 2005); Matney v. Hartford Life Ins. Co., 2005 WL 578476 (N.D. Tex. Mar 10, 2005); Richards v. Hartford Life and Acc. Ins. Co., 356 F. Supp. 2d 1278 (S.D. Fla. Dec 01, 2004); McLeod v. Hartford Life and Acc. Ins. Co., 372 F.3d 618 (3d Cir. 2004);  Hartranft v. Hartford Life and Acc. Ins. Co., 2004 WL 2377228 (D. Conn. Sep 30, 2004); Tripp v. Hartford Life and Acc. Ins. Co., 337 F. Supp. 2d 196 (D. Me. Sep 17, 2004); Barchus v. Hartford Life and Acc. Ins. Co., 320 F. Supp. 2d 1266 (M.D. Fla. May 04, 2004);  Kazazian v. Finlay Fine Jewelry Corp., 2003 WL 22594439 (D. Mass. Nov 10, 2003).

Plan's claim administrator/claim fiduciary/plan fiduciary/plan administrator under 20 CFR 2560.503-1. Dr. Kimberly has never been provided with the documents and file materials in UDC's possession, because Hartford never bothered to obtain them to make them part of the "administrative record" even though Hartford specifically utilized UDC as its agent in assisting administration of the claim during the appeal process, which Plaintiff contends makes those records part of the administrative record and certainly records which meet the definition in the regulations, 29 C.F.R. 2560.503-1(m), a copy of which Plaintiff is entitled to receive.

B. THIS COURT SHOULD NOT STRIKE OR DISMISS PLAINTIFF'S PRAYER FOR INJUNCTIVE RELIEF, AND IF NECESSARY IN ORDER TO SPECIFICALLY ENJOIN HARTFORD FROM FURTHER FIDUCIARY BREACHES, SHOULD GRANT PLAINTIFF LEAVE TO AMEND

With respect to a permanent injunction, Defendant has the wrong model. Defendant argues that Plaintiff cannot satisfy the elements to obtain an injunction 1) regarding the (truncated) content of the so called "administrative record" [and Hartford's refusal to allow Plaintiff the opportunity to address the new evidence Hartford commissioned and obtained following the claimant's only appeal, prior to Hartford conducting its own final review and issuance of a final adverse decision]. Plaintiff submits that the latter is a favorite tactic of Hartford, and has been for some years, despite being specifically told by the Secretary of Labor in an amicus brief to this Court, participating in the case of Russo v. Hartford, that Hartford violated its fiduciary duties in so doing. The Court, through the Honorable Leo S. Papas, thus held that Hartford had breached its fiduciary duties in that regard, which would permit the plaintiff, Mr. Russo, to supplement the record with additional evidence that was responsive to the evidence Hartford had blocked Plaintiff from reviewing or responding to. Russo v. Hartford Life & Accident Ins. Co., 2002 U.S. Dist. LEXIS 26566 (S.D. Cal. Feb. 5, 2002) (Held: Hartford breached its fiduciary duty by failing to disclose, after Plaintiff's requests to disclose, new opinions on which insurer relied in its final denial of the claim, which resulted in a review that was neither full nor fair under ERISA). Today, the one-sided record resulting from Hartford's self-interested tactic can be remedied by the district court permitting the affected claimant to supplement the record that is before the Court, and the court will review the record together with the new responsive information de novo. (Abatie; Saffon, below). A true and correct copy of the Secretary's amicus brief submitted in the Russo case, which sets forth the Secretary's position

about Hartford's improper maneuvers, is attached as Exhibit A to Plaintiff's Request for Judicial Notice concurrently filed herewith.

As referenced above, the Ninth Circuit more recently has held that the same type of maneuver is improper and is grounds for the Court, even under an abuse of discretion standard of review, to allow the claimant to respond to the post-appeal evidence Hartford caused to be generated, and that the Court will thus necessarily review such evidence de novo. Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955 (9th Cir. Cal. 2006) en banc; Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863, 2008 U.S. App. LEXIS 8136 (9th Cir. Cal. 2008) (as amended 4/16/08).[13]   Essentially 'thumbing its nose' at the Secretary's position she stated in her amicus brief, directly addressing Hartford's approach, Hartford has continued to employ the same tactics, not only commissioning in Dr. Kimberly's case, after his appeal, a 27-page report by a paper reviewer who never saw, spoke to, interviewed, examined or tested Plaintiff, and *despite Plaintiff's numerous request to see and respond to the new opinions or evidence before Hartford conducted its own final review*, then issued a shot-gun "final" denial letter within several days of the new report without any opportunity for Plaintiff to review or respond to that paper-review report and another shorter paper-review report.  Plaintiff believes that Hartford purposefully employed that tactic and will argue that the Court is limited to the so-called "Administrative Record" which Hartford will argue 'closed' with its new reports and immediate "final" denial.

Plaintiff will present evidence showing that Hartford engages in this self-interested tactic frequently.  These are not the actions of a plan administrator, adhering to the

---

[13]See also, Clark v. Qwest Disability Plan, 2008 U.S. Dist. LEXIS 28398, *2  (W.D. Wash. Apr. 8, 2008) following Abatie and Saffon:
    "However, as the Court indicated at oral argument, remand was not a foregone conclusion. Indeed, upon further consideration, the Court has concluded that the case should not be remanded to the Plan Administrator. See Saffon v. Wells Fargo & Co. Long Term Disability Plan, 511 F.3d 1206, 1217 (9th Cir. 2008) [1/9/08; later amended] (parties allowed to present additional evidence "in the district court"); Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 973 (9th Cir. 2006) (8/16/06) ("the court may take additional evidence when [procedural] irregularities have prevented full development of the administrative record").
    The Court will therefore conduct a one-day bench trial on the administrative record. No live testimony will be presented; 1 however, at her discretion, Plaintiff may supplement the record with written evidence tending to rebut the Reed Review Services and Genex, Inc. reports (which she saw for the first time on denial of her administrative appeal). . . .
    FOOTNOTES
    1 Taking additional evidence allows the Court to "recreate what the administrative record would have been had the procedure been correct." Abatie, 458 F.3d at 973. In line with this goal, any additional evidence should be submitted to the Court in written form.

"special standard of care [imposed] upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, *§ 1104(a)(1)*; it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2))."

Metropolitan Life Ins. Co. V. Glenn, 128 S. Ct. 2343; 2008 U.S. LEXIS 5030, *17; 76 U.S.L.W. 4495; 21 Fla. L. Weekly Fed. S 393 (June 19, 2008).[14]

Such continued breaches of fiduciary duty by an insurance company fiduciary, when Plaintiff pursues his claim under a statute that provides for findings of breach of fiduciary duty and injunctive relief, warrant permanent injunctive relief without the need to show a threat of irreparable or repeat injuries. Silver Sage Partners Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 826-827 (9th Cir. 2001).

Silver Sage is not an ERISA case. Silver Sage, however, involved violations of a federal statute (FSHA) under which the plaintiff sought an injunction against future violations of the statute. The Ninth Circuit reversed the district court's denial of injunctive relief grounded on the plaintiff's alleged failure to prove a "reasonable likelihood of future violations." The Court held that if the district court found that defendant had violated the particular federal statute at issue (in that case, the Civil Rights statute), and that statute provided for injunctive relief for violations of the statute [*as ERISA does*], that **future violations should be "presumed"**. Citing Ninth and Eleventh Circuit precedent, the Court held that

"[t]he standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief.[15]

---

[14]Defendant argues that "the primary purpose of ERISA [is] "to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." (Defendant's Memorandum at page 6:3-7). However, Defendant overstates its argument both expressly and implicitly. The "*primary*" purpose is greater employee protection of benefits.. Schikore v. BankAmerica Supplemental SI (MEJ) Retirement Plan, 269 F.3d 956, 962-63 (9th Cir. 2001) (" The purpose of ERISA is to protect the rights of employees in their benefit plans. 29 U.S.C.S. § 1001(b)"; " . . . the **purposes of ERISA, the central purpose of which is to protect the interests of participants** in employee benefit plans and their beneficiaries. 29 U.S.C.S. § 1001(b)."). See also, Glenn, supra, 2008 U.S. LEXIS 5030 at *15, noting: "Congress' desire to offer employees enhanced protection for their benefits." Varity, supra, at 497, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (discussing "competing congressional purposes" in enacting ERISA)."

[15] "After the end of the second trial, plaintiffs requested an injunction under § 3613(c)(1) enjoining the city from further violation of the Fair Housing Act or, in the alternative, an evidentiary hearing to determine the scope of necessary remedial measures. n16 The district court held that to obtain injunctive relief, plaintiffs "must show reasonable likelihood of future

Id. At 827.  See also, <u>Burlington N.R.R. Co. v. Dep't of Revenue</u>, 934 F.2d 1064, 1074 (9th Cir. 1991) ("The standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief"); <u>Gresham v. Windrush Partners, Ltd.</u>, 730 F.2d 1417, 1423 (11th Cir. 1984) ("irreparable injury may be presumed from the fact of discrimination and violation of fair housing statutes"); <u>Bedrossian v. Northwestern Memorial Hosp.</u>, 409 F.3d 840, 843 (7th Cir. 2005) ("if a statute confers a right to an injunction once a certain showing is made, no plaintiff... need show more than the statute specifies."); <u>O'Sullivan v. City of Chicago</u>, 478 F. Supp. 2d 1034, 2043 (N.D. Ill. 2007)[16].

Plaintiff's requests for injunctive relief to prevent future truncation of the record and future concealment of pertinent evidence related to Plaintiff's claim, requiring that Defendant's administrators and fiduciaries provide all such evidence to Plaintiff at a time he can still address it during an 'administrative' process and so as to obtain a full and fair review of all of the evidence and issues, is

---

violations of the Fair Housing Acts."  Finding that plaintiffs provided no evidence that the city was reasonably likely to violate the Fair Housing Act in the future, the district court denied plaintiff's motion.
. . .
Plaintiffs argue that in holding that the they must establish a reasonable likelihood that the city would continue to violate the Fair Housing Act, the district court reversed the burden of persuasion. They contend that since they have established that the city has violated the Fair Housing Act, future violation should be presumed. Plaintiffs' argument has merit. We have held that where a defendant has violated a civil rights statute, we will presume that the plaintiff has suffered irreparable injury from the fact of the defendant's violation. <u>Smallwood v. Nat'l Can Co.</u>, 583 F.2d 419, 420 (9th Cir. 1978)[**32] (discussing Title VII); see also <u>Burlington N.R.R. Co. v. Dep't of Revenue</u>, 934 F.2d 1064, 1074 (9th Cir. 1991) (**"The standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief**." (internal quotation marks and citation omitted)); <u>Gresham v. Windrush Partners, Ltd.</u>, 730 F.2d 1417, 1423 (11th Cir. 1984) (stating that "irreparable injury may be presumed from the fact of discrimination and violations of fair housing statutes")."
Id. At 826-827.

[16]<u>O'Sullivan</u> at 1043:
 "In sum, compliance with  the four-part [**26]  test generally applicable to requests for injunctive relief is inapplicable in the context of cases such as this. Were the rule as contended for by the City, <u>Bruso v. United Airlines, Inc.</u>, supra at 7, could not have been decided as it was. That is, the court would have employed the four-part test on which the City insists, rather than <u>conditioned relief simply on a showing that "the defendant's 'discriminatory conduct could possibly persist in the future</u>."" (underline added).

alleged narrowly enough to prevent overbroad reaching by injunctive relief.[17]   If the Court believes such

relief should be imposed generally on the LTD Plan due to the requirements in the Ninth Circuit to ensure

proper application of ERISA's requirement, then the Court can fashion that relief as "appropriate" and

as necessary.  Plaintiff, however, is seeking to remedy the violations and harms arising out of the conduct

of an administrator of the Plan, which was undertaken by Hartford and its employees and agents, when

applied to his case.   If, on the other hand, the Court believes such remedy must be applied not against

the Plan —so as to bind all of the fiduciaries and administrators of the Plan— but against the particular

insurance company that is alleged to have engaged in the ERISA violations (Hartford), Plaintiff should

be granted leave to amend his First Amended Complaint.   Either way, Hartford cannot deny its acute

awareness of the allegations in the First Amended Complaint and that they directly involve Hartford's

actions, process, procedures, claim investigation and claim handling, noncompliance with ERISA.  Since

SRSMG, the sponsor of the LTD Plan was not involved in the claim decision making or claim processing

and investigation and, Plaintiff believes, is not the entity defending Plaintiff's suit, Plaintiff anticipates

that Hartford will be advancing all of its positions and arguments in its own interest anyway.

## IV.  <u>CONCLUSION</u>

Plaintiff respectfully submits this Court should deny Defendant's motion at this early juncture,

inasmuch as this court would not be able to determine whether Plaintiff may obtain his benefits under

(a)(1)(B) but whether other equitable relief may be "appropriate" as the only remedy available to address

the alleged violations of the (fiduciary) administrator of the Plan, Hartford.  At the least, Plaintiff should

be granted leave to amend to name Hartford as a Defendant under 502(a)(3) in the lawsuit.

**MILLER, MONSON, PESHEL, POLACEK & HOSHAW**


/s Susan L. Horner

Dated:__July 3,  2008_____        By:_____

Susan L. Horner, Attorneys for Plaintiff,  Kent E. Kimberly, MD

\\SD1\WPServer\LIT\LITH-L\KIMBERLY MD\LIT\Pleadings\P's Oppo to MTStrikeDismiss_fin1 7-3-08.wpd

---

[17]When fashioning an equitable remedy for civil rights violations, courts are guided by general principles of equity, including "the principle limitation … that the relief should be no broader and no more burdensome than necessary to provide complete relief to the plaintiff." <u>Baltimore Neighborhoods,  Inc. v. LOB, Inc.</u>, 92 F. Supp.2d, 456, 468 (D.Md. 2000), citing <u>Milliken v. Bradley</u>, 433 U.S. 267, 279-280, 53 L. Ed. 2d 745, 97 S. Ct. 2749 (1977); <u>Lowery v. Circuit City Stores, Inc.</u>, 158 F.3d 742, 766 (4th Cir. 1998), vacated on other grounds, 527 U.S. 1031 (1999).